Filed 6/11/26  P. v. Roach CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD CORRY ROACH,<br><br>    Defendant and Appellant. | D085185<br><br><br><br>(Super. Ct. No. FWV1502979-2) |

APPEAL from an order of the Superior Court of San Bernardino County, Charles J. Umeda, Judge.  Affirmed.

Stephanie M. Adraktas, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arelene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Richard Corry Roach and his codefendant David McKell were charged with various crimes, including two counts of murder and one count of attempted murder, in connection with a drug-related robbery in February 2015. After McKell pleaded guilty to all the charges, Roach was convicted by jury on all counts. With one relatively minor exception pertaining to a gang enhancement, we affirmed the judgment of conviction on appeal. (*People v. Roach* (Mar. 30, 2020, D076195) [nonpub. opn.] (*Roach*.)

In 2023, Roach filed a petition for resentencing pursuant to Penal Code[1] section 1172.6, asserting he could no longer be convicted of murder based on recent changes to sections 188 and 189. First finding that Roach had established a prima facie case for relief, the superior court then conducted an evidentiary hearing at which the parties submitted the transcripts of Roach's trial and argued the significance of the evidence. After taking the matter under submission, the court in a 12-page statement of decision found that "the People ha[d met] their burden of proving beyond a reasonable doubt that the Petitioner is guilty of murder under California law as amended by the changes to Section 188 or 189."

Roach appeals, claiming that the court misapplied the governing standard of proof and reached conclusions that are not supported by substantial evidence. He also contends his attorney at the hearing provided ineffective assistance by failing to emphasize damaging admissions McKell made in a recorded jailhouse conversation with other prisoners. We are unpersuaded by any of these arguments, and accordingly affirm.

---

1      All undesignated statutory references are to the Penal Code.

2

Roach's petition relied solely on the transcripts of his original jury trial, and it was heard by the same judge who presided over that trial.[2] At the outset of the hearing on the petition, the judge stated he had reviewed the trial transcripts; neither party presented additional evidence. We therefore incorporate by reference the full Factual and Procedural Background from our *Roach* opinion. (See *Roach, supra*, D076195.)

In summary, the three victims were drug dealers who sold drugs from the cover of an automobile repair business. Arturo S. and Mario P. were the two murder victims. Hector Rivera, the third victim, survived despite being shot in the head and having his throat slashed. Roach was a customer of the victims who had previously purchased methamphetamine on several occasions. The evidence showed that Roach and McKell, along with a third individual known only as "Pocho," planned and conducted an armed robbery of the three victims at their auto garage, taking nearly $50,000 in cash and 15–20 pounds of methamphetamine.

Rivera provided much of the key evidence against Roach. Despite the fact that the victims' faces were wrapped in duct tape, Rivera was able to create a slit in the tape that he could see through. At trial he testified to what he saw and heard. According to Rivera, all three robbers had guns but Pocho left the garage area at some point, leaving Roach and McKell in charge of the victims. Rivera felt someone pull his hair from behind, then heard Roach say "dispensa" (an apology in Spanish) just before he felt a knife pierce his throat. Shortly thereafter, he heard gunshots on either side of him where Arturo and Mario had been laying. He again heard Roach's voice say

---

[2] Although the transcripts were not initially included in the appellate record, we granted Roach's request to augment the record with those materials.

3

"dispensa, Hector." Then, a gun was pressed against his scalp just before he heard a shot and felt a bullet enter and exit his head.

## DISCUSSION

**A.** ***The trial court employed the proper "beyond a reasonable doubt" standard.***

Roach first argues that the trial court committed prejudicial error by applying the wrong legal standard in deciding whether to grant his petition for resentencing. In his view, the court "employed an impermissible 'reasonable inference' standard" rather than requiring the prosecution to prove his guilt beyond a reasonable doubt.

It is well settled that once the superior court issued an order to show cause on Roach's section 1172.6 petition, the burden was on the prosecution to introduce evidence convincing the trial judge beyond a reasonable doubt that he was guilty of murder as currently defined under California law. (§ 1172.6, subd. (d)(3); *People v. Strong* (2022) 13 Cal.5th 698, 720.)[3] In this regard, the trial court "acts as an independent fact finder" to determine, based on the applicable reasonable doubt standard, "whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189." (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984.)

Here, the trial court expressly stated in both its oral and written ruling—at the outset and in its conclusion—that it found the evidence

---

[3] The statute reads in relevant part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

established beyond a reasonable doubt Roach was guilty of murder under California law as amended effective January 1, 2019.[4]  Roach suggests it is ambiguous whether the court applied the proper standard.  He faults the court for using phrases like "one could reasonably assume," "would reasonably lead one to believe," and "it is reasonable to assume" when analyzing the evidence, which he believes suggests the judge was evaluating the sufficiency of the evidence to support a conclusion rather making a factual finding himself.

We find no meaningful ambiguity in the court's statements.  We start with a presumption that the court applied the correct legal principles. (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 662 ["In the absence of evidence to the contrary, it is presumed the court was aware of and applied the proper burden of proof"].)  And when speaking of the governing standard of proof, the court here was quite clear it was requiring the prosecution to prove Roach's guilt beyond a reasonable doubt, "particularly [with respect to] the court's explicit final ruling." (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

The phrases highlighted by Roach do not provide "evidence to the contrary."  A fact finder is permitted to make reasonable assumptions (not otherwise contradicted by the evidence) and consider reasonable inferences.

---

[4]     Early in the ruling, the court explained that "the burden of proof shall be on the prosecution to prove, *beyond a reasonable doubt*, that the Petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (Italics added.)  At its conclusion, the court expressly stated its finding "that the People have [met] their burden of proving *beyond a reasonable doubt* that the Petitioner is guilty of murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (Italics added.)

(See, e.g., CALCRIM No. 223 [circumstantial evidence "is evidence of another fact or group of facts from which you may logically and reasonably conclude the truth of the fact in question"].)  It does so in deciding whether the prosecution met its burden of proof beyond a reasonable doubt.  It is the stacking of reasonable assumptions and inferences that can sometimes ultimately dispel reasonable doubt.  That is all the court was articulating in this case.  It did not apply an incorrect burden of proof.

**B.** ***Substantial evidence supports the trial court's conclusion that Roach was guilty of murder under three different theories.***

The trial court analyzed the evidence and made findings based on three different theories of first degree murder:  (1) Roach was the actual killer of one of the two victims (§ 189, subd. (e)(1)); (2) Roach aided and abetted McKell in the murder of the two victims with an intent to kill (§ 189, subd. (e)(2)); and (3) Roach was a major participant in the underlying robbery who acted with reckless indifference to human life (§ 189, subd. (e)(3)).  With respect to each of the first two, it relied on Rivera's testimony that he heard "two shots fired on both sides of him indicating that [Roach] and McKell were shooting at [Mario] and [Arturo]."  In the court's view, this physical reality demonstrated both that Roach was the actual killer of one of the two murder victims, *and* that he acted with an intent to kill.  The court added that Roach's intent to kill was also shown by his slashing of Rivera's throat.

With respect to Roach's liability as a "major participant," the court considered the various and often-overlapping factors identified in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 to conclude that Roach played a major role in the robbery and acted with reckless indifference to human life.  It found it significant that:

6

- Roach played an active part in planning the robbery.

- Roach was armed with and personally used both a knife and a firearm.

- Given the coordinated actions of the three robbers in producing their guns, it could be reasonably inferred that Roach was aware firearms would be used.

- Roach was present in the garage throughout the robbery and was in a position to either facilitate or prevent the loss of life.

- After the victims were shot, Roach fled the scene with the other robbers, making no attempt to render aid.

With respect to the evidence that he intended to kill the victims and was, in fact, the actual killer of one, Roach does not seriously contest that Rivera's testimony, if believed, would provide substantial evidence to support the trial court's findings. Instead, he relies on other evidence that he maintains makes certain aspects of Rivera's testimony inherently incredible. In particular, he points to a recording of a jailhouse conversation between McKell and other inmates in which McKell purportedly confesses, claiming credit for "popp[ing] everyone" with a ".380" and ".45" and "cut[ting] that fool's throat."

Roach's argument proceeds from the premise that McKell's "confession" must be true, so that Rivera must have been mistaken when he testified it was Roach who slit his throat and shot him in the head. Using similar logic, he asserts that Rivera must have been wrong about hearing two roughly simultaneous shots from guns on either side because McKell admitting to "popp[ing] everyone" and to using two different firearms. According to Roach, there is no credible evidence that he shot or knifed anyone.

7

Roach's argument fails in its premise. Accepting that Roach's interpretation of the jailhouse statements is correct,[5] the court was not required to accept McKell's admissions as the gospel truth. McKell may well have been exaggerating his role and minimizing Roach's to enhance his reputation among his cellmates. And even assuming McKell was accurate when he claimed to have shot both victims, this does not mean that Roach did not also shoot at least one victim. Indeed, there was evidence that one of the victims—Mario—was shot multiple times by two different guns. The critical part of Rivera's testimony is that he heard two shots at about the same time from two different locations, indicating that both McKell and Roach were firing a gun at a victim, and that both Mario and Arturo were then silent. If the trial court accepted this testimony as true, it makes little difference that McKell may have fired both weapons at some point in time.

Independent of Roach's involvement in shooting or knifing the victims, the trial court's conclusion with regard to the "major participant" issue is also fully supported by the evidence. Roach focuses on the evidence of his reckless indifference to human life, where he again faults the trial judge for "fail[ing] to acknowledge that McKell admitted that he was the one who had slashed Rivera's throat and killed the victims." He repeats his argument that Rivera "could have been mistaken" when he identified Roach—whom he knew before the incident—as the individual who said "dispensa" and slashed his throat. As we have already explained, however, the trial court was not required to accept all of McKell's admissions. Moreover, it is not our function as an appellate court to determine who was accurate and who was "mistaken"

---

[5]     Certain of McKell's statements are unclear as to whether he is referring to what happened generally during the robbery as opposed to what he did personally.

where witnesses provide inconsistent statements about an event. That is the trial court's job, and we are not permitted to reweigh the credibility of witnesses. (*People v. Myles* (2023) 89 Cal.App.5th 711, 738, 739.) Rivera's testimony, which the court was entitled to accept, provides more than substantial evidence to support a finding that Roach was a major participant in the robbery who acted with reckless indifference to human life.

## C. *Roach Fails to Establish Ineffective Assistance of Counsel*

Continuing his focus on McKell's jailhouse statements, Roach contends that his lawyer at the section 1172.6 hearing rendered ineffective assistance of counsel because he made only one brief comment and failed to emphasize the inconsistencies between McKell's admissions and Rivera's testimony. To establish ineffective assistance, a defendant must prove that (1) counsel's conduct was objectively unreasonable when measured by prevailing professional norms, and (2) but for counsel's deficient performance, it is reasonably probable the outcome would have been different. (*People v. Mai* (2013) 57 Cal.4th 986, 1010.) A lawyer's tactical decisions—what evidence to present and what arguments to make—are accorded particular deference and are presumed to fall "within the wide range of reasonable professional assistance." (*Strickland v. Washington* (1984) 466 U.S. 668, 689.)

Here, it is important to remember that the same trial judge presided over the trial and conducted the section 1172.6 hearing. The significance of McKell's jailhouse admissions was discussed by both sides in closing argument at trial. In addition, counsel's opportunity to argue at the hearing came *after* the judge had provided counsel with a detailed tentative ruling, which was to deny the resentencing motion. Even if defense counsel had highlighted McKell's jailhouse statements, it is not reasonably probable the

judge would have suddenly reversed course and deemed Rivera's testimony inherently incredible.  (*Strickland, supra*, 466 U.S. at p. 697 [ineffective assistance claim can be rejected on appeal without addressing the alleged deficiency in counsel's performance if it is clear the same result is reasonably probable in the absence of the alleged error].)

## DISPOSITION

The order is affirmed.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.